Would the clerk call the next case, please? 3-090604 Monee v. Monee Appellee by Angelica Dean v. Sylvia Rust Add all the Pounds by Corey Lund Thank you. Okay. Mr. Lund? Good morning. Thank you, ma'am. Good morning. May it please the court. Counsel. Your Honor, I represent five people who are either direct or beneficial interest holders of land that other people want to annex to the village of Monee. Now, there is little question that it is unfair that somebody else tells you what you have to do with your land. There is, however, no question that that can be done. There is a statutory procedure in the Municipal Code 65ILCS that permits an involuntary annexation of property if certain statutory requirements are met. In the case, insofar as it applies here, is the number of electors and primarily, although in the initial pleading I also contested that there were the proper number, the majority, of property owners. I withdrew that at the hearing as I came to learn about the way that some of the properties were held in trust and what the case law said. So the issue here is, what state of facts is a court to analyze in determining the validity of a petition to annex? It is our position that the state of facts to be analyzed is that that exists as of the date of the statutorily mandated hearing under these procedures. The trial judge determined that the state of facts that existed at the time the petition to annex was filed was the state of facts to be analyzed. This comes down to a matter of statutory interpretation. There is no case directly on point in regard to this issue. What happened was, is that without any notice to these landowners, a petition was filed. That is the statutory procedure. The petition gets filed. Notice then goes out to all of the people that are affected by the petition, and the court is to set a hearing, and objections are allowed to be filed based upon some of the statutory procedures that are listed in 65 ILCS 5-7-1-3, but also according to case law, other anything that goes to the validity of the petition. In this particular case, Your Honors, the petition was filed on May 4th. And then the issue that came up was one of the objectors and one of four residents on this entire group of property then registered to vote on May 20th. She became an elector under the statute. The hearing was opened on June 2nd and continued to June 10th, and on June 10th, the hearing was held where the objections were raised. But she wasn't an elector on the date the petition was filed. That is correct, Your Honor. She was not. She filed some 16 days after the petition was filed. She went and registered to vote. The objection was filed by her and others after she registered to vote. But I guess my question, what I'm really having a hard time understanding in your argument is if we operate under the argument that you're advancing, the petition would have been no good, and how could you have determined a majority of electors if that target moves to the hearing date? If you're going to file your petition and you've got to follow the statute, how, under your theory, do you ever get a perfected petition if you can change what is the majority after that date? Well, I'm unclear what you mean by a perfected petition, Judge, but it is... Well, it has to be signed by a majority of electors, if any. And if I have 10 electors when I get it signed, but after it's signed, after it's filed, after we move forward, then 10 other people register to vote. My filing is based on what was true as of the date I filed. How can... I mean, now it's no longer any good? I don't understand how you're ever going to have something that is correct at the time of filing because that's necessary. At the time it's filed, it has to be legally correct at that point. If what you say is true, then you have to look at what happens after it's filed. What our position is, Your Honor, is that you look at the state of facts that exist at the hearing, and that may be a situation where there are more people registered to vote than there were at the time of the filing of the petition. That is a possibility. As a practical matter, in these situations, people who are petitioning to annex, they look at the voters' rolls. They know how many people are residing on the property. You have to reside on the property for a certain period of time before you can register to vote under our statutes. So you can know very easily by just dealing with the county clerk as to how many total electors are in this territory that you are dealing with, how many potential total electors there are. You can easily find that out. But potential isn't a statutory requirement. Potential elector isn't what's required to file a petition, right? That is correct. The petition, which is a pleading, alleges that there is a majority of electors who have signed the petition. And doesn't that pleading have to be sufficient at the time that it's filed? It is a pleading which is supported by an affidavit, which the affidavit may be filed any time up to the point of the hearing, which verifies, that somebody verifies, that the pleading is accurate. Under the Wadsworth case, you don't need to file the affidavit with the pleading. It was done in this case. The affidavit was filed with the pleading. But what I'm saying, and the statutory language says, that there is a pleading that a majority of electors have signed the petition to enact. But as a pleading, that is not necessarily the state of fact, either at the time it is filed or at the time of hearing, because pleadings are filed all the time that are not accurate when they are filed. Is it possible to have a pleading that triggers the jurisdiction of the court, but then later have objections that would defeat that petition, and the objectors' objections would be measured at the time of the hearing, or not? Yes, you're right. In fact, one of the cases that is cited by both sides for different propositions is the annexation to the city of Crest Hill. That is a case that kind of highlights why there's some confusion here. But what it does is somebody filed a petition to annex, and that involved some property that was, at the time the petition was filed, that was held in trust with nine beneficial interest holders. The legal description that was attached to the pleading was bad. That is one of the requirements of the pleading in the petition to annex set out by statute, that your description of the property must be good. If it's not, that's one of the objections to be raised. Well, in this particular case, before the matter ever went to hearing, it was determined by the petitioner that my description of the property is bad, I need to amend that, and the court gave leave to amend. Well, in between the time of the initial filing and the amended filing, the trust distributed out the holding of that one parcel of property to the nine beneficial interest holders. That now made the balance of the number or the majority of property owners inequitable, meaning that the pleading was incorrect now because there were not a majority of the owners. The court then went on and determined, and the appellate court agreed, that the time that we are going to consider your petition filed was as of the date of your amendment. Another interesting part of this case is that the nine now owners that upset the balance were on the perimeter of the property and could have opted out under the statutory procedure. But did not. They opted to stay in to keep the majority issue out of filter, and therefore the petition to annex was dismissed. So, yes, facts may change in between the time of the filing and the time of the hearing that do alter the landscape. In this case, correct me if I'm wrong, parcel number eight had two tenants that were electors? We allege they were tenants. It is disputed that that is not of record. I believe it is of record because the parcel... Let's assume that parcel number eight was not part of the parcel to be annexed. Then there would have been a majority of the objectors against annexation. That's correct. So are you suggesting, or at least I got the impression from your brief, that there's some thought that this parcel number eight was added just to kind of tilt the balance of electors? The statute, unfortunately, requires that evidence of that doesn't come into play, Your Honor. I know what I know. All right. I know what is of record and what I can argue. And I can't argue that there was some addition. But parcel number eight is the furthest parcel from the village of Monee, is it? It is absolutely the furthest parcel. It is owned by two trusts. It is a residential unit. And because the electors that resided there agreed, then they did not contact the other people in parcel number... Parcel six is where the other... They weren't even contacted. Again, Judge, there are facts that are not of record here and that aren't supposed to be brought up. Don't argue them. And I'm not going to argue them. I do not know, nor is it of record, whether they were ever contacted by these owners. But the facts of record are the two electors in parcel number eight were against. The one elector in parcel number six were in favor. Parcel eight were in favor. Parcel six was against. And had parcel eight not been part of the package, six would control. The single voter in parcel six would control. Under that set of facts, yes, the objection would have been filed by the one registered voter in the territory. And then there would have been not a majority by the petitioners. And the petition would have been dismissed. Counsel, you have two minutes. Mr. Lund, as a matter of fact, you agree, do you not, that at the time the petition was filed, it was signed by a majority of the electors? I agree with that, Your Honor. And your contention is that that changed at some point and that not the sufficiency of the filing, but the validity of the petition became a matter of issue. Correct. The Touchef case, the Supreme Court case from 50 years old, 1958, says you can analyze anything that involves the validity of the petition in an objection to the validity of the petition. That almost leads you to the conclusion that you have to look at the state of facts that exist at the time of the hearing as opposed to the time the petition was filed. When you are looking at it that broadly, you are almost led to the conclusion that you look at the state of the facts. The Wescon case that I cite in my brief is the closest case factually, admittedly a different statute, but it was almost identical here where the Woodridge Park District filed to annex. Somebody registered to vote. The court said, no, we're not looking at that registration, so we don't need to have an election in the territory to be annexed. The appellate court said, no, you're wrong. You have to consider that person who voted in the interim. And therefore, your decision to not vacate your order about not having an election in the territory is wrong. And they reversed the trial court's decision to not consider that voter. That along with, I think, the statute itself that says when you go to hearing on this, you deal first with the perimeter objections. Anybody who wants out, who's on the perimeter, who won't destroy the contiguity can get out. That is the legislature saying we are looking at who wants out at that instant, who wants out at that hearing. It is anomalous then to go back and say we're going to figure out the rest of the validity of this petition by going back 30 days. When the legislature itself says, let's look at what goes on at the hearing and who wants out. But I have a question about the Westcom case before the other side comes up. In Westcom, wasn't it though, the Park District passed an ordinance based on a petition and that voter registered before that petition was ever filed in court. Is that correct? That's how I read it, is that the voter registered after ordinance passed before petition to annex was filed. The ordinance was approved by the Park District on April 13th of 1976. The petition was filed in court to hold an election on April 20th of 1976, seven days later. The voter registered on April 28th, 1976, eight days after the petition was filed. It went to hearing on May 5th, 1976. So the sequence was petition filed, voter registered, hearing. The judge said no, the trial judge said no, there are no registered voters in that territory because at the time you registered to vote, the appellate court said that's wrong. So you have to consider when that person was in the territory to be annexed because he registered to vote and did so after the filing of the petition by the Park District. And that case went on to deal, it also dealt with the issue of whether the territory to be annexed was contiguous. You've answered my question. Thank you, thanks for that. I'd like to reserve my right for rebuttal. You have a right. Thank you. Ms. King? Is that right? That's correct, Your Honor. Good morning. Good morning. May it please the court. Counsel. Your Honor, I represent the electors and the landowners who filed the petition in the circuit court to annex this land. Our position is that the circuit court correctly ruled that the petition, annexation petition, complied with all statutory requirements. And in support of that, I'm going to address briefly the language of the statute, the cases that are instructive on its meeting, and then address some of the questions that have been raised by Your Honors and also issues raised by the objectors. Let me draw your attention, Your Honors, once again to the specific statute that we're looking here. That's Section 712 of the Municipal Code. That governs an annexation procedure that, as here, is initiated with a petition filed with the court and signed by the majority of electors and landowners in the annexation territory. In each place in that statute, 712 and the following three sections, in every case in which the electoral majority is referred to, that's directly linked to the petition as it was filed with the court. Thus, the language itself of the statute says a written petition signed by the majority of the electors shall be filed with the court. 713 states a valid objection is that the petition is not signed by the requisite number of electors, and objections are to be made at least five days before the hearing date. Section 714 requires the circuit court to dismiss the petition if the petition is not signed by the requisite number of electors. Now, we submit that the absence of language stating that the electoral majority should exist on the hearing date is not silence on the question of when the electoral majority is to exist. The statute is not silent. The statute refers in at least three instances to the electoral majority existing when the petition is filed. We submit that the absence of language stating that the majority is to be counted at the hearing date denotes a legislative intent that says there is neither a requirement nor authority to count the electoral majority at an alternative date other than the date on which the petition is filed. The case that we submit is most instructive on the reading of the statute is Crest Hill, and it is true that the objectors and we read the significance of that case differently, but that was decided by this court, and it is important in the reading here. The court first, the appellate court first determined what the effective date of the petition was, and in that case, because the original petition was patently defective and the petitioners asked to have it amended, the court determined the effective date of the petition was the date on which the amended petition was filed. Then the court proceeded to say it would not permit the petitioners to remove territory afterwards, to remove those additional landowners who had appeared between the original filing date, or excuse me, the effective date and the hearing date, would not permit a change in the petition between the filing date and the hearing date so as to alter the number of landowners. The petitioners in that case lost. In our case, we're using the case to support the petitioner's position. However, we submit that the significance of Crest Hill is that the court is not authorized to, between the petition date and the hearing date, add electors that would then destroy the majority that exists on the date that the petition is filed. Now two other decisions are important in looking at the reading of the statute, at the legislative intent. The Springfield decision that was decided by the Court of Appeals in the Fourth District in 1967 looked at exactly the statutory language under consideration here. Now the issue there was whether contiguity was required to exist on the date that the petition was filed or whether it could exist on some later date here, a post-hearing amendment. The reason contiguity is relevant to a reading of electoral majority is that both of them are such serious defects that if either contiguity is absent or the electoral majority is absent, the court is required to dismiss the petition for annexation. The court looked at the statute and held that contiguity must exist on the date the petition is filed and the absence of contiguity on that date could not be altered by subsequent events, namely contiguity occurring after the date the petition is filed. The Supreme Court also addressed language almost identical to 7-1-2 here. In the Belleville case, the Supreme Court interpreted the language under 7-1-8. That's a different statutory procedure. Under that procedure, the petition is filed by the petitioners with the municipality, and then the municipality is to hold a hearing. The court looked closely at the statutory language, again a contiguity case where the court held contiguity had to exist on the date the petition was filed. Subsequent events were not relevant to that determination, and the court looked at the statute and said this language is drafted in the present tense. Contiguity is to exist. More importantly, then, the court looked at 7-1-3, the same language the court is looking at here, which says that it is grounds for dismissal of the petition if contiguity does not exist on the date the petition is filed. Now, counsel correctly points out that that section, 7-1-8, was subsequently amended by the legislature. The legislature amended 7-1-8 so that it now provides that contiguity may exist on the annexation date. However, there is no suggestion that the subsequent amendment of the statute means that the Supreme Court's reading of the statute when the statute was originally adopted was incorrect, and there is no case supported in support of that proposition. So we submit that the Supreme Court's reading of the statutory language in the Belleville case is very instructive on the fact that the legislature intended that the electoral majority exist on the date the petition was filed. Ms. King, there's some language in the statute that you're asking us to look at that talks about prima facie, petitions so verified shall be accepted as prima facie evidence of such facts. Does that not suggest that the petition, the facts in the petition are rebuttable? Your Honor, that suggests that the facts in the petition are rebuttable, but we submit that it's no instruction about when the state of facts or when the facts alleged in the petition are to be true. Now, in this case, it's not a specific issue because the affidavit was filed at the same time as the petition. The question does arise what the significance would be if this affidavit had been filed, for example, on the hearing date. And we submit that at that time the affidavit would still have required, under the other holdings of the prior decisions, to refer to the date that the petition was filed. Okay. Let me address the significance of Wescom as long as we're talking about case law. Wescom was decided under the Park District Code and under that annexation provision that the court was looking at in that case, the court was specifically required to order an election in the annexation territory. That makes that statute very different from the one that we're evaluating in this case. However, it makes that procedure the equivalent of another procedure contemplated by our very statute, 712. So, for example, if the municipality had filed a petition for annexation with the circuit court, then under the statute the court would have been required to order an election in the annexation territory. So we submit that Wescom is not dispositive because it's a different statutory scheme altogether, and that when the legislature wanted the electors to have a role after the hearing date, the legislature knew how to require that the electors have that role by writing specific language in the statute that an election be held. In this case, the legislature did not write in that language. On the other hand, it wrote in language saying that the petition that was filed was to be signed by the majority of the electors. I want to make a point about fairness that has come up on two occasions. The fairness of people having their, being told how their land should be used, but also the fairness of the right to vote. This was stressed in the objector's brief, and I have to agree that the right to vote is a crucial right, and people in this country and throughout the world have in fact suffered and died for that right to vote. But in this country, the right to vote is prospective. So this elector who first registered to vote, a resident of the area but first registered to vote in the middle of 2009, was not thereby deprived of the right to vote in the 2008 general election, no matter how important the issues were to her. She simply was not in the eligible class of electors for purposes of the 2008 general election. And we submit, likewise, having registered to vote after the petition was filed, she was not in the eligible class of electors as defined by the statute at the time the petition was filed. Counsel, what is the smallest parcel of the eight parcels? I don't know the dimensions, Your Honor, but the smallest ones are owned by the two residents, two residents who are objecting, one of whom was a registered voter when the petition was filed, and the other who registered subsequently. So that's parcel six? I think it's six. It's the designation. But in the diagram, eight looks small. That's the one with the other voters. But it's your belief that six is the smallest? Your Honor, I have looked at this picture over and over, and I happen to... And I may be incorrect. We can all, when we conference it, can look at the diagram. It's not going to change. Fine. I'm a little troubled by the fact that the three parcels closest to the village are all objectors. Your Honor, and Your Honor had raised the question before, if the parcel with the two voters had been omitted... Not included. Correct. Then what would have occurred? What would have occurred is this petition would not have been filed, because the petition has to be filed by a majority. So we would have been looking at a completely different annexation procedure if something had proceeded with respect to this territory. Are there no other parcels within that contiguous area that have voters living on them? Your Honor, the record does not state how many residents are in the annexation territory. What the record does show is that at the time the petition was filed, there were three electors, two of whom signed the petition, one of whom did not, and eventually became an objector. And then subsequently there was another resident who registered to vote. We do not have any record of how many people lived in the territory. Clearly not heavily populated, because it is, for the most part, except for some developed land, farmland. But, Your Honor, let me respond specifically to the question that you began with, and that is the question of the implication of the fact that the three closest do not... Was it do not have... They're objectors. They're objectors. They don't want to be annexed. And in that case, we would refer the Court to the Supreme Court decision in North Barrington, because that was another perception of fairness case, in which the Second District had created what they were calling the appendage rule. I'll show you a few numbers. The appellate court said that because the owners of land in what they call the so-called appendage in this area objected to the annexation, the majority objected, therefore the appendix would be carved out. And the Supreme Court said that was not allowable. And let me emphasize the language of the Supreme Court in that, because it is an instructive case. The time-honored principle of majority rule had the appellate court create this appendix rule, and the circuit court and the Supreme Court said that was unacceptable for three reasons. There are three principles. Number one, the legislature alone has the authority to allow or require alteration of municipal boundaries. Secondly, the court's function is to determine whether the petitioners have complied with the procedures in the statute. And thirdly, the court lacks any discretion to determine what shall constitute a sufficient petition. Rather, it decides on the sufficiency of the petition in accord with statutory requirements. In the one minute I have remaining, I would like to talk very briefly about Section 713 that allows non-enumerated objections to validity. Two cases have touched on that. Touchette, the Supreme Court case, and then Bull Valley, a second district case. In both cases, the courts insisted that invalidity on non-enumerated grounds has to constitute or comprise of a violation of a statute. In Touchette, it was lack of notice and violation of the Cities and Villages Act. In Bull Valley, on the other hand, because there was no violation of a statute, the court held that these non-enumerated grounds could not be used to challenge or would not be successful in challenging the validity of the petition. We urge the court to affirm the circuit court's ruling, and we thank you very much. I have one final question. Yes, Your Honor. I beg your indulgence. The electors on parcel eight are not property owners. Is that a fact of record? It's not a fact of record. Thank you, Ms. King. Mr. Long, rebuttal. Thank you. You have five minutes. Thank you. Judge, I would disagree with your last question to Ms. King about whether the two electors were or were not owners. The petition itself has signatures. You don't have to spend all your time on this, because I can go back and compare the signatures as the electors and then know who the property owners are. So I can make that comparison. The owners are two living trusts. The petitioner, their name is Kesch, K-A-E-S-C-H, who are not the owners or the signatories as the trustees of the living trust. Okay. Your point is noted and I'll take it. Okay. Now, I would like to quote from the Touchette case from 1958. Talking about this statute, the statute as a whole contemplates the filing of objections for any matter going to the validity thereof by any interested person. So Touchette, from 1958, never contradicted, and again talked about in the Bull Valley case from last year, says any issue going to the validity of the petition is to be analyzed. Those issues may not exist at the time of the filing of the petition. They may come up. They may not deal with the electors or the owners. They may deal with any issue. To go back, to then have to say, well, wait a minute, if an issue going to the validity came up two days after the filing, but you've got to look back at that snapshot of the filing date, that can't be what the legislature intended in this. In a voluntary annexation petition procedure where someone petitions a municipality, there is, for instance, the requirement of contiguity. Under the statute, contiguity must exist only as of the last date, before the last event occurs, being the ordinance, the passing of the ordinance by the municipality. It seems strange that the legislature would say, for a voluntary annexation, we are going to look at the absolute last event that can take place. But yet, for an involuntary, where people are going to have their rights affected, whether they like it or not, we're going to look at the first event that takes place, which is the filing of the petition. The Wooddale case says a petition, the filing of a petition only initiates the process. There are many steps yet to take, which include the filing of objections, the hearing by the court, and if the court determines the petition is valid, it then sends it to the municipal authorities to go through the process. I do find it very anomalous that the legislature would say where everybody agrees, we're still going to have the analysis of contiguity done on the last event, but where everybody disagrees, we're going to have it done on the first event. That can't be what the legislature intended here. And there is no language in the statute that directs a circuit court on a petition for the court-controlled annexation as to what to look at. I'm saying that the language as a whole, the Touchette case, which says look at everything that applies to validity, says to us go to the hearing, go to the last date, the last state of facts. I think that's what the legislature intended here, as best we can tell. And this statute's been around a long time, and it has been amended here and there, but Touchette, in talking about what we do to look at the validity, has been around for 52 years. It's a 1958 Supreme Court case that says anything that affects the validity of the petition. Again, Judge, you asked about the size. I believe it is of record, because it is a survey. There is a scale that tells you what size these properties are. There are two five-acre parcels that are 165 feet wide each that are being involuntarily used here. It is not a recognized objection under this statute to say that someone is doing a strip annexation. That's not recognized. But that is the connection here. 330 feet wide is the connection, based upon the survey. This is parcel 6. This is parcel 6. Is 8 smaller or larger? Judge, I haven't measured 8 for that. I know I have measured each of these two parcels. Actually, you have one more. Thank you. That's a residential area, both north and south, of these two parcels that have houses on each of them. So, I would just ask that, based upon everything that we have discussed today, that this court determine that the trial court erred by analyzing the validity of the petition as of the time of filing versus those facts that it had available as of the time of the hearing on the validity, in order that the trial court's order sending the petition to the village of Moni be vacated and that the petition to annex be dismissed. Here's another tier for the objectors, and that is they could go to the village meeting when annexation is on the agenda, I'm guessing. It is a public meeting that the residents may go to and actually have been. So, if the majority of the village trustees or whatever they are do not vote to annex, it won't happen? There is that procedure that exists for the village, and then there is also another procedure where there can be, based upon petitions of residents of the village of Moni, there can be a referendum election held on that to overrule potentially what the corporate authorities do. So, there are two other steps, potential steps, in the process. Thank you. Thank you, Your Honor. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand.